## Fessler *versus* Hickernell and Bomberger.
## Fessler's Appeal.
## Bomberger's Appeal.

1. A partner who has paid a firm debt is not entitled to subrogation against his co-partner until an account has been settled between them.

2. The equitable doctrine of subrogation only applies when both funds are in the hands of a common debtor of both creditors.

3. Section 9 of the Act of 22d April 1856 does not apply to any case in which the amount which the substituted creditor has a right to collect from the adverse party under the judgment has not been ascertained.

4. H. and B. were partners and insolvent. F. held a judgment against the firm and also a joint bond of the firm of like amount, and levied an execution under his judgment upon the personal and real estate of H.; whereupon L., a junior mortgage creditor of H., tendered F. the amount of his debt and costs, and demanded to have the judgment assigned to himself: *Held* (reversing the court below), that section 9 of the Act of 22d April 1856 did not apply to such a case, and that L. had no equitable right to such an assignment.

May 20th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.    WILLIAMS, J., absent.

Appeals from a decree of the Court of Common Pleas of *Lebanon county:* Of May Term 1876, Nos. 92 and 93.

These were appeals from a decree subrogating Jacob Lauser, a mortgage creditor of Hickernell, as plaintiff in the case of Fessler *v.* Hickernell and Bomberger, upon the payment to Fessler of the amount of his judgment and costs in that·case.

The judgment in that case was entered by Fessler on December 21st 1874, upon a bond with warrant of attorney against Hickernell and Bomberger; in November 1875, execution was issued thereon and a levy was made upon certain real estate belonging to Hickernell. Hickernell and Lauser thereupon presented a petition to the court below, setting forth these facts and also that Lauser held two mortgages upon the land of Hickernell, the lien of which was immediately subsequent to Fessler's judgment; the petition prayed for a rule on Fessler to show cause why Fessler should not receive from Lauser the amount due on his judgment and costs, stay the execution thereon, mark the judgment to the use of Lauser and proceed against the lands of Bomberger for part of his debt.

The petition further showed that the lien of Lauser's mortgages would be divested by the sale under the execution, and Lauser, on account of the financial depression, would be obliged to pay more for the land than it was worth at that time in order to protect himself, and that Hickernell's property would be sacrificed. Fessler filed an answer to it, setting forth that he held another bond of Hickernell and Bomberger for the same amount, which was still unpaid; that he was willing to look to Bomberger alone for the

[Fessler *v.* Hickernell.]

payment of this latter bond if Hickernell would pay the amount due upon the judgment, and that he would be willing to mark the judgment to Lauser's use upon payment thereof, but only upon condition that before doing so he should be allowed to release Bomberger, who was his son-in-law, from any liability thereupon; the answer denied the power of the court to make the order prayed for by Lauser and Hickernell.

Bomberger also filed an answer in which he set forth that he and Hickernell had formerly been partners, that the accounts of the firm were still unsettled and that he believed that Hickernell would be largely indebted to him upon a settlement; that Hickernell was insolvent and if the judgment in question was marked to the use of Lauser and not collected from the sale of Hickernell's real estate, he, Bomberger, would be obliged to pay the same, as well as the amount of the other bond to Fessler.

Hickernell filed replications to the answers of Fessler and Bomberger, denying that a settlement of his partnership affairs with Bomberger would show a balance due Bomberger, and that Lauser was endeavoring to put the burden of the judgment upon Bomberger alone, but, on the contrary, averring that Fessler and Bomberger were colluding to make him pay more than his share of the judgment.

The court below (Henderson, A. L. J.) held that the case came within the Act of 22d April 1856, sect. 9, and ordered that " Fessler upon the payment of the debt, interest and costs of said judgment by Lauser, do assign the same to Lauser without recourse, to the end that he may receive and collect from the other defendant, Bomberger, the amount to which he would be entitled by subrogation or by way of contribution. And, if the said plaintiff should refuse to accept the same, the execution and all proceedings thereon should be stayed."

Section 9 of the Act of the 22d April 1856, is as follows:—

" Whensoever the real estate of several persons shall be subject to the lien of any judgment to which they should by law or equity contribute, or to which one should have subrogation against another or others, it shall be lawful for any one having right to have contribution or subrogation, in case of payment, upon suggestion by affidavit and proof of the facts necessary to establish such right, to obtain a rule on the plaintiff, to show cause why he should not levy upon and make sale of the real estate liable to execution, for the payment of said judgment in .the proportion or in the succession in which the properties of the several owners shall, in law or equity, be liable to contribute towards the discharge of the common encumbrance, *otherwise* upon the payment of such judgment to assign the same for such uses as the court may direct; and the court shall have power to direct to what uses the said judgment shall be assigned, and when assigned, direct all executions thereupon, so as to subserve the rights and equities of all parties whose real estate shall be liable

thereto; and if the plaintiff shall refuse to accept his debt and make such assignment of his judgment, the executions thereupon in the hands of the plaintiff, shall be so controlled and directed by the court as to subserve said rights and equities."

Fessler and Bomberger appealed from this decree, and assigned for error, (1) that the court had not dismissed the petition of Hickernell and Lauser, and (2) the above decree.

*J. Funk*, for appellants.—Lauser has no rights *per se;* he must work out his advantage, if any, through Hickernell : Dorr *v.* Shaw, 4 Johns. Ch. 18; Eberhardt's Appeal, 8 W. & S. 331; Ex parte Kendal, 17 Ves. 520. The rule as to subrogation exists only where both funds are in the hands of a common debtor of both creditors : Lloyd *v.* Galbraith, 8 Casey 108.

So long as the partnership accounts are unsettled, equity will not order subrogation in favor of either: Sterling *v.* Brightbill, 5 Watts 233; Singizer's Appeal, 4 Casey 526.

Even aside from the partnership accounts, Hickernell has no equity until he has paid half of the joint indebtedness to Fessler.

There can be no subrogation in any event till Fessler is paid in full on both claims : Kyner *v.* Kyner, 6 Watts 227 ; Bank of Penna. *v.* Potius, 10 Id. 152 ; Cottsell's Appeal, 11 Harris 294; Hoover *v.* Epler, 7 P. F. Smith 524.

*C. P. Miller*, for appellees.—This case falls within the remedy provided by sect. 9 of Act of 22d April 1856; Roddy's Appeal, 22 P. F. Smith 99.

Fessler's judgment was joint and a lien upon Bomberger's land as well as Hickernell's, while Lauser had a lien only upon Hickernell's land; Lauser, therefore, upon paying Fessler, is entitled to subrogation to his rights : Mosier's Appeal, 6 P. F. Smith 76. The real estate of Hickernell and Bomberger was held by them in severalty ; therefore no equities arising out of their partnership can be considered.

Mr. Justice PAXSON delivered the opinion of the court, May 29th 1876.

The radical error of the decree made by the court below consists in the fact that it attempts to work out the equities between Bomberger and his partner Hickernell in a summary manner. Where one partner has paid a partnership debt, he is not entitled to subrogation against his copartner until an account has been settled between them. In what other way can it be ascertained which is the creditor and which the debtor partner ? This difficulty confronts us instantly in any attempt to enforce the order made in this case. How can it be ascertained upon the execution how much of the debt Bomberger ought to pay ? Clearly this cannot be done without a set-

[Fessler *v.* Hickernell.]

tlement of the partnership accounts. It may be that upon such settlement it will be found that Hickernell ought to pay the whole of the judgment. In such case Lauser, the appellee, would be in no condition to claim subrogation for the purpose of having the judgment enforced against Bomberger. Lauser has no equity. His mortgage post-dates the judgment. He had notice of the latter when he loaned his money. Nor can he successfully invoke the principle that when a creditor has a lien on two funds in the hands of the same debtor, and another creditor has a lien only upon one of the funds, the first may be compelled in equity to levy his debt out of the fund to which the other cannot resort. This equitable rule has never prevailed except in cases where both funds were in the hands of the common debtor of both creditors. The equity of the the second creditor is precisely that of the debtor, and is worked out through the equity of the latter: Lloyd *v.* Galbraith, 8 Casey 108. Here Lauser is the creditor of Hickernell alone. Fessler is a creditor of Hickernell and Bomberger. Hickernell is the common debtor, and he has but one fund. Lauser has no equity, unless he can work it out through his debtor Hickernell. The latter can have no equity to throw the claim upon his partner until by a settlement of the partnership accounts he shows Bomberger to be in his debt.

The learned judge of the court below evidently based his decree upon the Act of 22d of April 1856 (Pamph. L. 534). We think it manifest from an examination of said act that it was not intended to apply to any case in which the amount the substituted creditor has a right to collect from the adverse party under the judgment has not been ascertained. This is the first step in subrogation.

The decree is reversed and the petition dismissed, with costs.